519 A.2d 397

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**WILSBACH DISTRIBUTORS, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 1985.

Decided Dec. 17, 1986.

Reargument Denied March 27, 1987.

216

Ronald M. Lucas, Harrisburg, for appellant.

Richard A. Lewis, Dist. Atty., Judith Brown Schimmel, Nathan H. Waters, Jr., City Solicitors, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

PAPADAKOS,* Justice.

This is the appeal of Wilsbach Distributors, Inc., Appellant, from the Opinion and Order of the Commonwealth Court vacating the judgments of sentence entered against it by the Court of Common Pleas of Dauphin County, and remanding the matter to the trial court to enable Appellant to file post-trial motions on certain matters relevant to this appeal.

Appellant is an importing distributor of malt and brewed beverages and is licensed by the Pennsylvania Liquor Control Board, pursuant to Section 439 of the Liquor Code,[1] to operate a distributorship in the City of Harrisburg. On December 12, 1978, the City of Harrisburg enacted a Business Privilege Mercantile Tax Ordinance which imposed a tax on the privilege of doing business in the City of Harrisburg equal to one and one-half mills per $1,000.00 of gross volume of business conducted within the territorial limits of the City of Harrisburg, subject to a maximum tax of $3,000.00. Appellant did not pay the Business Privilege and Mercantile Tax for 1979 and 1980 claiming that it was exempt from the payment of the City imposed tax.

On October 13, 1981, Appellant was served with citations for failure to pay the City taxes, and was found guilty of failing to pay the taxes by a district justice on March 30, 1982. An appeal to the Court of Common Pleas of Dauphin County was timely taken. Prior to the *de novo* trial, Appellant and the City stipulated that the tax due for 1979 would be $1,522.48 and $1,685.00 for 1980, plus penalties for late payment. Following a hearing before the Honorable

---

* Reassigned to this writer.

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–439, provides in pertinent part:
   ... no license to any ... importing distributor ... shall be issued ... until the licensee shall have first paid an annual fee, as follows:
   (c) In the case of an importing distributor, the license fee shall be nine hundred dollars ($900) and shall be paid to the Board.

John C. Dowling, Appellant was found guilty of not paying the taxes, a summary offense.

An appeal followed to Commonwealth Court. There, Appellant argued 1) that the Pennsylvania Liquor Code is such a comprehensive legislative regulation of the liquor industry that the City is prohibited from taxing Appellant, under the doctrine of pre-emption; 2) that the Local Tax Enabling Act prohibits the City from taxing Appellant, since the Commonwealth has already imposed a tax and license fee on the same subject matter; and 3) that the trial court erred in directing that Appellant pay back taxes and penalties as a part of its sentence imposed pursuant to a summary offense conviction. The Honorable Francis A. Barry, writing for an unanimous seven member *en banc* court, rejected Appellant's first two arguments, but remanded on the third issue to give Appellant an opportunity to file *nunc pro tunc* post-trial motions before the trial court on this issue pursuant to Pa.R.Crim.P. 1123(a). *Wilsbach Distributors, Inc. v. Commonwealth*, 81 Pa.Commonwealth Ct. 244, 473 A.2d 1123 (1984).

We granted Appellant's Petition for Allowance of Appeal to examine the interesting question of whether the legislation regulating the liquor industry is so comprehensive in itself, or in conjunction with the taxes and fees imposed by the Commonwealth over the liquor industry, as to prohibit the City from levying its own tax on the same subject.

In reviewing legislation to resolve the question of whether pre-emption arises, we are guided by the standard articulated by this Court in *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 380–81, 77 A.2d 616, 619–20 (1951):

There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand there are statutes which expressly provide

that municipal legislation in regard to the subject covered by the state act is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the state; in such cases the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is, of course, self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute.... [M]unicipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations ... but if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid.... (Citations omitted.)

Appellant admits that the Liquor Code is silent on the question of pre-emption and argues that we are required to analyze the provisions of the various acts involved in order to ascertain the probable intention of the legislature in regard to pre-emption. We agree.

Before embarking on a review of the Liquor Code and taxing provisions, however, one important digression is in order. Commonwealth Court, in reviewing Appellant's pre-emption claims, chose to reject them by relying on this Court's decision in *United Tavern Owners of Philadelphia v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868 (1971). In that case, Mr. Justice O'Brien, speaking for himself, argued that his review of the Liquor Code and tax scheme imposed on the liquor industry indicated that the Legislature chose to take the field and pre-empt local taxation on the liquor industry. No member of the Court joined that opinion. Mr. Chief Justice Bell and Mr. Justice Rob-

erts only concurred in the result. Mr. Justice Pomeroy dissented and was joined by Mr. Justice Eagen, who both felt that the Liquor Code regulations and tax schemes were not so comprehensive as to prevent local municipalities from taxing the liquor industry. Justices Cohen and Jones did not participate in the consideration or disposition of the case. Three members of the Court (O'Brien, Pomeroy and Eagen, JJ.) did agree that the Liquor Code, by itself, was not a sufficiently comprehensive regulatory statute to prevent local taxation on the liquor industry. Three other members of that Court (O'Brien, Bell, Roberts, JJ.), however, agreed that the result reached in striking down the local tax was correct, albeit for unrevealed reasons.

Given the splintered voting pattern of *United Taverns*, Commonwealth Court's cautious reliance on *United Taverns* to dispose of Appellant's argument of pre-emption may well have been misplaced, and we feel it appropriate to re-examine the issue especially in light of our more recent decision in *City of Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980), where a clear majority of the Court found the Banking Code and the Department of Banking Code sufficiently comprehensive regulatory schemes to pre-empt local taxation and since a full compliment of this Court is participating in the consideration and disposition of the issues being raised.

Our review of the Liquor Code and regulations promulgated thereunder indicate the legislature's clear intent to regulate in plenary fashion every aspect of the alcoholic beverage industry. Every phase, from manufacture to sale and disposition is subject to the exclusive control of the State through its designated arm of enforcement, the Liquor Control Board.[2]

2. Section 104 of the Liquor Code, 47 P.S. § 1–104(c), provides in pertinent part:

... the purpose of this act is to prohibit the manufacture of and transactions in liquor, alcohol, and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the Board.... The provisions of this act dealing with the manufacture, importation, sale and distribution of liquor, alcohol and malt or brewed beverages within the Commonwealth through

As our decisions have made clear, there is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. *V.J.R. Bar Corp. v. Liquor Control Board*, 480 Pa. 322, 390 A.2d 163 (1978); *In re: Tahiti Bar, Inc.*, 395 Pa. 355, 150 A.2d 112 (1959); *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (1959). The state is vested with the sole authority to determine whether alcoholic beverages, their manufacture, gift, purchase, sale, possession or transportation shall be permitted or prohibited within its borders.[3]

The power of prohibition includes the lesser power of regulation and a state may adopt such measures as are reasonably appropriate or needful to render the exercise of that power effective. In view of the virtually absolute control over the business of dispensing alcoholic beverages, it is clear that the conduct of such business is lawful only to the extent that it is made so by the Liquor Code. *Tahiti Bar; Cavanaugh v. Gelder*, 364 Pa. 361, 72 A.2d 85 (1950).

In the exercise of its legitimate state interest, the Commonwealth, through the Liquor Control Board, directly controls what beverages may be bought or sold in the Commonwealth,[4] who may sell on the retail and wholesale level,[5] for what prices beverages may be sold and bought from the State,[6] and to issue licenses to distributors and wholesalers so that they may sell to consumers through its Board.[7] The Commonwealth controls not only the geographical location of all its licensees,[8] but also the physical structures in which

the instrumentality of the Board or otherwise, provide the means by which such control shall be made effective.

3. 47 P.S. §§ 2–207, 4–491, 4–492.
4. 47 P.S. § 2–207.
5. 47 P.S. §§ 4–401, 4–431, 4–437.
6. 47 P.S. §§ 2–207(b), 2–208(e).
7. 47 P.S. §§ 2–207(d), 4–401.
8. 47 P.S. §§ 2–207(c), 4–461.

beverages may be kept and sold.[9]   The site of *every* licensed premise in the Commonwealth is exclusively within the discretion of the Board.[10]   The only concessions to municipalities is their right to exclude any or all classes of licensees (i.e., dry municipalities), 47 P.S. § 4–472, and to exercise appropriate zoning controls.

Enforcement of the Code and its regulations is vested in the Board.   The Board and its investigative staff are vested with the full police power to enter any licensed establishment and check for violations of the Code, and, if necessary, to arrest violators of the Code and its regulations, and to seize unlawfully obtained beverages in plain view, without warrant.[11]

As part of the legislature's regulatory scheme, fees are imposed for the privilege of obtaining and keeping licenses issued by the Board (47 P.S. § 8–801).   These fees are collected for the benefit of the municipalities in which the licensed establishments are located and are rebated by the Commonwealth to those municipalities.

Finally, indicative of the Commonwealth's plenary exercise of control over the alcoholic beverage industry are the extensive taxes imposed on all sales of alcohol on the local and retail levels.   Considerable revenues are generated for the Commonwealth by its operation of the State Liquor Stores and the additional taxes imposed on purchases and sales of alcoholic beverages.   In addition to the revenues generated by the operation of the State Liquor Stores and license fees collected pursuant to the provisions of the Code, the Commonwealth also raises revenue by its imposition of four other taxes on all sales and purchases of alcoholic beverages.   (Spirituous and Vinous Liquor Tax Law, Act of December 5, 1933, P.L. 38, 47 P.S. § 745 et seq.; Emergency Liquor Tax, Act of June 9, 1936, Ex. Sess, P.L. 13, as amended, 47 P.S. § 794 et seq.;  Malt Beverage Tax Law, Act of May 5, 1933, P.L. 284, as amended, 47 P.S. § 103 et

**9.**   47 P.S. §§ 4–440, 4–442, 4–461, 4–491(6).

**10.**   47 P.S. §§ 4–404, 4–437(f).

**11.**   47 P.S. §§ 1–104(a), 2–209.

seq.; Sales Tax Act, Act of March 4, 1971, P.L. 6, Article II, as amended 72 P.S. § 7201.)

Our decision in *City of Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980), is not inapposite to the result we reach here. In *Allegheny Valley Bank*, we reviewed the Banking Code [12] and the Department of Banking Code [13] to determine whether the legislation was so comprehensive as to indicate the legislature's intention to reserve regulation and taxation of the banking industry exclusively to the Commonwealth. After review, we found that the statutes under consideration demonstrated the implementation of a comprehensive regulatory scheme over a private industry which needed state protection for the economic security of the public economy and the financial soundness of the banking institutions. The local taxing scheme was found to be an impermissible intrusion in the Commonwealth's statewide regulation of the banking industry and was struck down.

*Allegheny Valley Bank* does not stand for the proposition that the state's regulation over an industry will preempt local regulation or taxation only when the nature of the industry regulated involves its financial soundness. Fiscal stability is only one of the considerations which may motivate the state to enact pre-emptive regulations in its desire to protect the industry's financial soundness for the health, welfare or safety of the citizens and the economy. We are still required to examine all relevant legislation in order to ascertain the extent of the regulation over an industry and the legislature's purpose in regulating the industry. *West. Pa. Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616 (1951).

The regulatory scheme now under review controls a public, state-run monopoly, maintained for the health, welfare and safety of the citizens of this Commonwealth and upon

12. Act of November 30, 1965, P.L. 847, §§ 101, et seq., as amended, 7 P.S. §§ 101 et seq.

13. Act of May 15, 1933, P.L. 565, §§ 1, et seq., as amended, 71 P.S. §§ 733–1 et seq.

which the Commonwealth depends for substantial revenues. Such pervasive control over all phases of the liquor industry, along with the extensive taxation and fees imposed, indicates the legislature's intent to control this industry and to receive all the benefits inherent by regulating the industry, including raising revenues through regulation to the exclusion of all local attempts to interfere with the state regulation by imposing taxes on a local level.

We conclude that the legislature has adopted a scheme of regulation so pervasive over the entire alcoholic beverage industry, that it has "pre-empted the field" to the exclusion of all interference from subordinate legislative bodies. Such pre-emption by the legislature bars local legislative control by regulation or taxation.

The Business Privilege and Mercantile Tax imposed on Appellant is a tax on its privilege to conduct a distributorship within the City of Harrisburg. This privilege is granted by the State, is absolutely controlled by the State, and not the City of Harrisburg, through fees, regulations and taxes, and is, thus, an improper subject for the City to tax. Since the taxation of Appellant's privilege of doing business is pre-empted by the Commonwealth, the Business Privilege Tax impermissibly "impinges" upon this area and the Harrisburg tax is invalid as applied to Appellant.[14]

The Order of the Commonwealth Court is reversed and the citations filed against Appellant are dismissed.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed and the citations filed against appellant are dismissed.

NIX, C.J., files a concurring opinion.

14. This decision, of course, does not mean that Appellant is exempt from all municipal taxation. As noted in *Allegheny Valley Bank*, 488 Pa. 544 at 554, footnote 12, 412 A.2d 1366 at 1371, footnote 12, municipal taxation of real estate is not pre-empted by the legislature. See 72 P.S. § 7701.

ZAPPALA, J., files a concurring opinion, joined by McDERMOTT, J.

FLAHERTY, J., files a dissenting opinion, joined by HUTCHINSON, J.

NIX, Chief Justice, concurring.

I concur in the result reached by the majority. I disagree, however, with the majority's "preemption of the field" analysis and therefore cannot embrace the reasoning of the majority opinion.

I do not agree that the State's preemption of a field of activity for regulatory purposes in and of itself deprives a municipality of the power to levy taxes on businesses operating within that field. In *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 412 A.2d 1366 (1980), a majority of this Court as then constituted reasoned that the City of Pittsburgh's Business Privilege Tax as applied to banks impermissibly impinged upon an area preempted by the Commonwealth. In my dissenting opinion in that case, I drew a distinction between regulation of a field and a municipality's power to tax business within that field:

> Today's opinion of the Court correctly states that the state legislature intended to "exclusively occupy the state *banking* field." At 1369, emphasis added. This observation, however, does not compel the conclusion that the legislature also intended to deprive municipalities of their statutory power to levy taxes applicable to all businesses within the municipality. The Pittsburgh Business Privilege Tax does not intrude upon the state's exclusive domain of bank *regulation*, it merely requires banks located within the City of Pittsburgh to pay the same that every other business in Pittsburgh pays.
>
> *Id.*, 488 Pa. at 556–557, 412 A.2d at 1372 (Nix, J., joined by Eagen, C.J.) (footnotes omitted, emphasis in original).

Rather than employ the *City of Pittsburgh* majority's preemption analysis, I urged an approach which looks to the legislative grant of local taxing power:

Since the language of the Local Tax Enabling Act expressly gives the City of Pittsburgh the "power to levy, assess and collect taxes upon any and all subjects of taxation ... which the Commonwealth has power to tax but which it does not tax or license," an option which has been exercised by the City of Pittsburgh by ordinance, the effect of today's decision is to infer from bank regulatory enactments an exemption from the city's business privilege tax. This result plainly contravenes the rule that a statutory provision purporting to exempt persons and property from taxation must be strictly construed. 1 Pa.C.S.A. § 1928(b)(5); *Bd. of Revision of Taxes of Philadelphia v. United Fund of Philadelphia Area*, 11 Pa. Cmwlth. 201, 314 A.2d 530 (1973).

Id., 488 Pa. at 561, 412 A.2d at 1375 (footnote omitted).

In the instant case, unlike *City of Pittsburgh, supra,* such an analysis leads to the conclusion that the City of Harrisburg's Business Privilege Tax may not be imposed upon a malt and brewed alcoholic beverage distributor. Section 3 of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, § 3, 53 P.S. § 6903, provides:

If, subsequent to the passage of any ordinance or resolution under the authority of this act, the General Assembly shall impose a tax or license fee on any privilege, transactions, subject or occupation, or on personal property or on sales of admission to places of amusement or on sales or other transfer of title or possession of property taxed by any such political subdivision hereunder, the act of Assembly imposing the State tax or license fee thereon shall automatically vacate the ordinance or resolution passed under the authority of this act as to all taxes accruing subsequent to the end of the current fiscal year of such political subdivision. *It is the intention of this section to confer upon such political subdivision the power to levy, assess and collect taxes upon any and all subjects of taxation, except as above restricted and limited, which the Commonwealth has power to tax but which it does not tax or license,* subject only to

the foregoing provision that any tax or license shall automatically terminate at the end of the current fiscal year of the political subdivision. (Emphasis added.)

The clear language of section 3, when applied to the subject of the manufacture, sale and distribution of malt and brewed beverages, compels the conclusion that the Local Tax Enabling Act does not authorize municipal taxation of that activity. This subject is one that the Commonwealth *has* exercised its power to tax, license and collect licensing fees. *See* Act of April 12, 1951, P.L. 90, art. IV, § 431 *et seq., as amended,* 47 P.S. § 4–431 *et seq.;* Act of May 5, 1933, P.L. 284, § 1 *et seq., as amended,* 47 P.S. § 103 *et seq.* Thus, by the terms of the Local Tax Enabling Act, a municipality is not authorized to levy a business privilege tax on a malt and brewed beverage dealer.

ZAPPALA, Justice, concurring.

Reluctantly and with trepidation, knowing its logical convolution, I join the Court's judgment that the Business Privilege Tax of the City of Harrisburg may not be applied to the Appellant Wilsbach Distributors, Inc. because of the comprehensive legislation by which the General Assembly has pre-empted the field of alcoholic beverages. I have serious doubts about the rationale of *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh,* 488 Pa. 544, 412 A.2d 1366 (1980), which blurred the lines between the regulatory/police power and the taxation power to find that legislative pre-emption of the former supported an inference of pre-emption of municipal action in the latter. The Court has, I am afraid, cast the appropriate analysis from its moorings and left cases such as these to be decided by standardless, unstructured judicial fiat.[1] *See, Allegheny*

---

1. Compare *Liberty Bell Racing Association v. City of Philadelphia Tax Review Board,* 86 Pa.Cmwlth. 83, 483 A.2d 1063 (1984), where the court enumerated many sections of the Harness Horse Race Meeting Corporations Act in concluding that the legislature had pre-empted the field so as to invalidate Mercantile and General Business Taxes as applied to race tracks, with the present case where the court stated simply, "Suffice it to say that the Banking Code is not the Liquor Code and *Allegheny Valley* is distinguishable on that ground alone." 81 Pa.Cmwlth. at 252, 473 A.2d at 1127 (footnote omitted).

*Valley Bank,* 488 Pa. at 557, 412 A.2d at 1372 (Nix, J., dissenting). Mr. Justice, now Chief Justice, Nix, dissenting, aptly addressed the deficiencies of this "field pre-emption" approach, 488 Pa. at 556, 412 A.2d at 1372. Mr. Justice Flaherty presently revives the "historic separation" of these powers in his dissent. Dissenting opinion at 230, n. 1 (Flaherty, J., dissenting). Nevertheless, *Allegheny Valley Bank* stands as the law of the Commonwealth and the case at bar presents no opportunity to overrule it.

Although I recognize the distinctions between regulating the banking business and the business of selling alcoholic beverages pointed out by the Appellees and Mr. Justice Flaherty, in the framework of the *Allegheny Valley Bank* "analysis" I am not persuaded that these distinctions make a difference. Because I would find it unjust to permit an isolated industry or two to continue to reap the benefit of *Allegheny Valley Bank,* I am unable to join the members of the Court who would foreclose that concededly tenuous rationale from these Appellants and others to whom it might apply. As the difficulty arises out of the necessity of discerning legislative intent, if the result in any particular case proves flawed or unworkable, we may trust the General Assembly to correct our erroneous interpretation.

McDERMOTT, J., joins in this concurring opinion.

FLAHERTY, Justice, dissenting.

The majority holds that the legislature has adopted a regulatory scheme over the alcoholic beverage industry that pre-empts the field of taxation to the exclusion of most other taxation by local governmental agencies. For the following reasons, I dissent.

The majority's view rests on this Court's decision in *City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980) (hereinafter *"Allegheny Valley Bank "*), which held that the legislature's comprehensive regulation of the banking industry precluded the imposition by the City of Pittsburgh of a local tax on any function of the national and state banks within the city. The majority

believes that the same result is required here due to the legislative regulation of the malt and brewed beverage distribution industry. I disagree.

In *Allegheny Valley Bank* this Court considered the stated purpose of the regulatory enactments governing the banking industry, as expressed in the legislature's delegation of power and duties to the Banking Department, to be indicative of the regulatory concern and purpose of the enactment. So viewed, the express legislative regulatory scheme for the banking industry emanates from *a primary concern for the financial soundness of banking institutions,* in order to afford the greatest possible safety to depositors, creditors and shareholders, and maintain public confidence in the institutions. Department of Banking Code, Act of May 15, 1933, P.L. 565, § 1 *et seq., as amended,* § 202, 71 P.S. § 733–202. It was thus concluded that local taxation was inconsistent with the stated purpose and invalidly impinged upon the responsibility of the Banking Department. *Allegheny Valley Bank, supra* 488 Pa. at 553, 412 A.2d at 1370.

Thus, the holding of *Allegheny Valley Bank* is primarily attributable *not to the degree of state regulation* of the banking industry, as is stated by the majority, *but to the nature of the industry regulated,* and the goals inherent in the regulation of such an industry. Local taxation necessarily and unavoidably impinges upon and jeopardizes the subject of the regulation in the specific area of concern, the financial soundness of banking institutions, thus giving rise to the holding of this Court that the local taxation of banks created a "direct burden" upon the banking industry in contravention of the manifest legislative intent to maintain the soundness of banks. *Id.*

When compared to the legislative enactment regulating the malt beverage industry, the difference in focus is apparent. The expressly stated purpose of the Liquor Code, *supra,* as set forth in Section 104(c) is "to prohibit the manufacture of and transactions in ... malt or brewed beverages ... except by and under the control of the [liquor

control] board as herein specifically provided ...," [1] 47 P.S. § 1–104(c). Likewise, the general power and duty conferred to the Liquor Control Board, relevant to this case, is to control the manufacture of and commerce in malt and brewed beverages, 47 P.S. § 2–207(b). Thus, it becomes clear that the legislative concern is *the exercise of control over commerce in a commodity*, without any suggestion of concern for the financial soundness of the entities necessarily regulated.

Additionally, a pervasive concern crucial to the *Allegheny Valley Bank* decision was the concept of a unified state wide regulation of a financial institution with an eye to the best interests of the public at large and tending to be exclusive of local concerns. That intent is not evident with regard to the regulation of the malt and brewed beverage industry which is indeed pursued with a view to the impact of the industry upon localities. Section 437(f) of the Liquor Code provides that the combined number of distributor's and importing distributor's licenses shall not exceed a ratio of one license for each fifteen thousand inhabitants of the county in which the licenses are issued, 47 P.S. § 4–437(f). Legislative concern for the regulatory impact upon the locality is evidenced also by the establishment of local option, the means by which a municipality may, by a majority vote of its electors, determine that no licenses for the distribution or retail sale of liquor, alcohol or malt and brewed beverages shall be granted by the Liquor Control Board, 47 P.S. § 4–472.

Thus, I do not perceive any indication in the state's regulation of malt and brewed beverage distribution comparable to that of the regulation of the banking industry which evidences an intention on the part of the legislature to exclude local taxation as improperly impinging upon the state regulated industry. Because the stated purpose of

1. The legislative regulation of this industry is expressly a police power enactment, 47 P.S. § 1–104(a), which, in view of the historic separation of the police and taxation powers, is a *prima facie* indication of legislative intent not to intrude upon a locality's power to impose a tax under the Enabling Act.

the regulatory scheme is not jeopardized or burdened by local taxation, local taxation is not inconsistent with the legislature's objective of maintaining control over the commerce in the regulated commodity. Accordingly, so long as the local tax imposed is valid under the Enabling Act, it should be upheld. Because of its disposition of the case, the majority does not address the question of whether the Enabling Act permits the imposition of a local tax on the liquor industry, but since I would hold that legislature did not intend to preclude local taxation, I proceed to address the question of whether the Enabling Act permits such taxation.

Section 2 of the Enabling Act delegates to municipalities the power to

> levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions ...

53 P.S. § 6902. Pursuant to this delegation, the City's Business Privilege and Mercantile tax was enacted which, as applied to Wilsbach taxes at a rate of one and one-half mills per $1000 of gross volume of business conducted within the territorial limits of the City, up to a maximum tax of $3000. The City tax, by its own definition, is a tax upon the "privilege" of doing business within the territorial limits of the City and is measured by the gross receipts of the business.

The concept of a business "privilege" tax was reviewed in *F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971) and was upheld generally as a proper municipal enactment under the Enabling Act. However, Wilsbach challenges not the general validity of the tax but its application to an importing distributor of malt and brewed beverages, arguing that it constitutes a tax invalidly duplicitous of other state taxes and license fees impacting its business operations. Wilsbach relies upon Section 2(1) of the Enabling Act which establishes an exclusion from the legisla-

ture's broad delegation of taxation power and which provides, in pertinent part:

Such local authorities shall not have authority by virtue of this act:

(1) To levy, assess and collect or provide for the levying, assessment and collection of any tax ... on a *privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee;*

53 P.S. § 6902(1) (emphasis supplied).

Wilsbach argues that two state taxes, the Malt Beverage Tax, imposed by the Malt Beverage Tax Law, Act of May 5, 1933, P.L. 284, § 1 *et seq., as amended,* 47 P.S. § 103 *et seq.* (hereinafter the "Malt Beverage Tax") and the general six percent sales tax levied pursuant to the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, § 101 *et seq., as amended,* 72 P.S. § 7101, *et seq.* (1985 Supp) (hereinafter "Sales Tax") as well as a state license fee imposed by section 439(c) of the Liquor Code, *supra,* bar the imposition of the City's tax.[2]

**2.** Wilsbach seeks to rely upon *United Tavern Owners of Philadelphia v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868 (1971) in which a sales tax imposed by the Philadelphia School District upon sales of liquor and malt and brewed beverages by retail-type establishments was held invalid under a provision similar to that in issue here, i.e. the Sterling Act, Act of August 5, 1932, P.L. 45, *as amended,* 53 P.S. §§ 15971–15973. Because the Sterling Act and the instant Enabling Act are virtually identical in wording and intendment, the same case law has been applied to both.

However, because of the division of the Court in *United Tavern Owners,* the result there reached is of no avail to Wilsbach. In *United Tavern Owners,* the leading opinion announcing the judgment of the court was written by then Mr. Justice O'Brien with Mr. Chief Justice Bell and Mr. Justice Roberts concurring in the result only. No opinion purporting to speak for more than two justices appears and the two-justice opinion is a dissenting opinion. Thus, the result reached in *United Tavern Owners,* of striking down the local tax, is binding as precedent only if the case is factually identical to the instant case. It is not.

The local tax imposed in *United Tavern* was a ten percent tax on the *sale* of liquor and malt and brewed beverages in hotels, restaurants, taverns and clubs within the City of Philadelphia. The local tax in instant case is a privilege tax upon the gross receipts of all businesses operating within the City of Harrisburg imposed for the privilege of

In addressing the question whether a local enactment taxes the same "privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee," as prohibited by Section 2(1), the "incidence" of the allegedly duplicitous tax is examined. *Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 136 A.2d 821 (1957). The incidence of a tax embraces 1) the subject matter of the tax, 2) the measure of the base, i.e., the base or yardstick by which the tax is applied, *F.J. Busse Company v. Pittsburgh, supra* 443 Pa. at 357, 279 A.2d at 18; *Commonwealth v. National Biscuit Co., supra* 390 Pa. at 652, 136 A.2d at 826–827, and occasionally, 3) an identification of the party subject to the tax, *Mellon Square Garage, Inc. v. Public Parking Authority of Pittsburgh*, 442 Pa. 229, 232, 275 A.2d 654, 656 (1971).

Under these "incidence" criteria, the "subject" of the City tax, as stated in the ordinance and accepted as a valid exercise of the taxation power in *F.J. Busse v. Pittsburgh, supra,* is the *general* "privilege," under Section 2(1), of doing business in the city. Its "measure" is the gross receipts of the business and the party legally responsible for payment of the tax is the party engaged in business, here, Wilsbach.

The Malt Beverage Tax is thus distinguishable from the City tax on all three bases of incidence: the subject of the Malt Beverage tax, though not clearly identified by the Act, appears to be a "transaction," under Section 2(1), of a manufacturer's sale of malt or brewed beverage for use in the Commonwealth, whether the manufacturer is inside or outside the Commonwealth, 47 P.S. § 105(a), the measure of the tax base is a volume of beverage manufactured and sold by the manufacturer, *Id.,* and the party legally responsible for the tax is the manufacturer,[3] 47 P.S. § 105(c). Accord-

doing business in that City and, accordingly, on that crucial factual distinction alone, the result reached in *United Tavern Owners* holding invalid the local tax is without value to appellant Wilsbach.

**3.** Wilsbach argues that because sales of beverage to unincorporated organizations of armed forces personnel are exempt from the Malt Beverage Tax and because Wilsbach is thus "reimbursed" by the

ingly, I perceive no duplicity of taxation violative of Section 2(1).

Next, appellant points to the Sales Tax, Tax Reform Code of 1971, *supra,* which imposes upon "each separate sale at retail" a tax of six percent of the purchase price. 72 P.S. § 7202(a).

The "subject" of a sales tax is a "transaction" under Section 2(1), i.e., a sale at retail, *Mellon Square Garage, Inc. v. Public Parking Authority of Pittsburgh, supra* 442 Pa. at 232, 275 A.2d at 656; *Blauner's Inc. v. Philadelphia,* 330 Pa. 342, 345, 198 A. 889, 891 (1938) whereas the subject of the City tax is the "privilege" under Section 2(1) of conducting business in the locality. On this dissimilarity, it is apparent that the City" privilege" tax does not breach Section 2(1)'s prohibition against taxing a "transaction" already subject to a state tax. Moreover, the measure of the tax is dissimilar, for in the case of the Sales tax, it is the purchase price, whereas the City tax is calculated on a "gross receipts" basis. Additionally, the party subject to the Sales Tax is the party making the purchase, with the importing distributor, who acts as a vendor, being responsible as the "collector" and remitter of the tax to the Commonwealth. 72 P.S. § 7202(a). Again, I perceive no violation of Section 2(1).

Finally, the state's imposition of an annual license fee of $900 upon an importing distributor under Section 439(c) of

manufacturer for Malt Beverage Tax paid on beverage subsequently sold by Wilsbach to such associations, the true "incidence" of the tax is upon Wilsbach, the importing distributor, not upon the manufacturer.

However, it is not relevant that the Malt Beverage Tax is, in effect, "included" in the price paid by Wilsbach to a manufacturer upon Wilsbach's purchase of the beverage. The Malt Beverage Tax Act, as well as regulations promulgated by the Department of Revenue under the Authority of the Section 113 of that Act, expressly provide that such refunds shall be made by the Department of Revenue to the *manufacturer* upon the manufacturer's affidavit and proof, 47 P.S. § 112(b) & (c), 61 Pa.Code §§ 74.33, 74.32. In the event of delinquency in payment, the penalty sanction established by the Act is directed against the manufacturer, 47 P.S. § 105(a.1) and on these criteria, the incidence of the tax is clearly upon the manufacturer. *Tax Review Bd. v. Esso Std. Division,* 424 Pa. 355, 358, 227 A.2d 657, 658 (1967).

the Liquor Code, 47 P.S. § 4–439(c) and the related $20 application fee for annual license renewal under Section 439(h) of the Liquor Code, 47 P.S. § 4–439(h), is asserted as barring the imposition of the City tax. Assuming that there may exist duplicity in that the Liquor Code provision imposing a license fee is upon a "privilege" under Section 2(1), *see Pennsylvania Liquor Control Board v. Publicker Commercial Alcohol Co.*, 347 Pa. 555, 560, 32 A.2d 914, 917 (1943), the question is whether the City tax, which also taxes a "privilege," is imposed upon a privilege already subject to a state license fee and thus is within the prohibition of Section 2(1).

The state license fee is for the privilege of conducting a *specific* type of business, distribution of malt and brewed beverages. This is distinguishable from the City tax which is a tax upon the *general* privilege of conducting business within the City, not on the specific privilege, as is licensed by the state, of selling a regulated commodity.

That two distinct privileges may exist and are separately taxable, one by the state and one by the locality, was established in *Federal Drug Co. v. Pittsburgh*, 358 Pa. 454, 57 A.2d 849 (1948) which upheld the imposition of a city privilege tax on entities also subject to a tax on foreign corporations for the separate privilege of conducting business in the Commonwealth "in corporate form". *Id.*, 358 Pa. at 457, 57 A.2d at 850. Here, there are two distinct taxable privileges, one taxed by the state for the privilege of engaging in malt and brewed beverage distribution and one taxed by the City for the privilege of engaging in business within the territorial limits of that city. Thus no duplicity prohibited by Section 2(1) is present.

Accordingly, because the Business Privilege and Mercantile Tax imposed by the City of Harrisburg is consistent with the legislature's regulation of the malt and brewed beverage distribution industry and because the tax is not duplicative under Section 2(1) of any State tax or license fee upon the same "privilege, transaction, subject, occupation or personal property," 53 P.S. § 6902(1), I would affirm the

236

decision of the Commonwealth Court upholding the validity of the tax.

HUTCHINSON, J., joins this dissenting opinion.