## WISSINOMING BOTTLING CO.

### v.

## SCHOOL DISTRICT OF PHILADELPHIA and City of Philadelphia and Honorable Cheryl Weiss, Appellants.

### SCHOOL DISTRICT OF PHILADELPHIA, Appellant

### v.

## TAX REVIEW BOARD OF CITY OF PHILADELPHIA to the Use of Clement & Muller, Inc.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1994.

Decided Jan. 25, 1995.

Reargument Denied March 7, 1995.

Richard Feder, for appellants.

Stewart M. Weintraub, for appellees.

Before DOYLE and McGINLEY, JJ., and DELLA PORTA, Senior Judge.

DOYLE, Judge.

The School District of Philadelphia, City of Philadelphia, and Cheryl Weiss, Revenue Commissioner of the City of Philadelphia (collectively, the City), appeal an order of the Court of Common Pleas of Philadelphia, which granted Wissinoming Bottling Company's (WBC) motion for summary judgment and enjoined the City from collecting the City's Use and Occupancy tax (U & O tax).[1] Consolidated with the above, the City also appeals an order of the same trial court which had affirmed two orders of the City's Tax Review Board, granting a petition for review of the U & O tax paid by Clement & Muller, Inc. (C & M), a distributor and importer of malt beverages and granting a refund to C & M.[2]

### FACTUAL BACKGROUND OF WBC'S APPEAL

WBC is an importing distributor of malt and brewed beverages, licensed by the Pennsylvania Liquor Control Board, which is located within the City of Philadelphia and hence within the School District of Philadelphia. The District determined that WBC was subject to the tax; however, WBC refused to pay its September 1990 U & O taxes, amounting to $575.96, because it believed it was exempt from the tax.

On November 5, 1990, WBC filed the equity action against the City seeking a declaration that WBC is exempt from the City's U & O tax because the Commonwealth has plenary control over the alcoholic beverage industry and local governments are preempted from imposing the tax on importers and distributors of malt and brewed beverages. Further, WBC sought an injunction preventing the City and the District from enforcing and collecting the tax. Thereafter, WBC filed a motion for summary judgment which the trial court granted, holding that WBC was not subject the U & O tax because the authority to levy the tax was preempted by the Commonwealth's pervasive regulation of the alcoholic beverage industry. The trial court's holding was based on the decision of our Supreme Court in *Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986).

### FACTUAL BACKGROUND OF C & M'S APPEAL

C & M is an importing distributor of malt and brewed beverages doing business in vari-

---

1. Section 19–1806(2) of the Philadelphia Code provides:

   The Board of Education of the School District of Philadelphia is authorized to impose a tax for general school purposes on the use or occupancy of real estate within the School District of Philadelphia ... for the purpose of carrying on any business, trade, occupation, profession, vocation, or any other commercial or industri-al activity. The tax is imposed on the user or occupier of real estate.

2. While WBC's case was an equity action and C & M's case was a statutory appeal, the trial court, nevertheless consolidated both cases for argument, because they involved the same legal issues.

ous locations in the City. In 1988, C & M filed a petition with the City's Tax Review Board (TRB) for a refund of $72,200, the total amount of U & O taxes it paid for one of its locations from 1984 to 1987. In addition, C & M filed a petition for review with the TRB of a U & O tax assessment, covering the years 1987 through 1989, which concerned a warehouse that C & M rented to store malt and brewed beverages. C & M argued in its petitions, *inter alia*, that it was entitled to a refund because the U & O tax was preempted by the Commonwealth's regulation and taxation of malt beverages. The TRB agreed with C & M and, likewise relying on *Wilsbach*, granted C & M's petition and ordered a refund.

The City appealed the TRB's decision to the trial court which, using the same rationale that it utilized in deciding WBC's case, affirmed the TRB.

### DISCUSSION

As stated, the City appealed both orders which were consolidated for argument by this Court and the same arguments are presented in both appeals. The City contends that the trial court erred in granting the motions of WBC and C & M for summary judgment for the following reasons: (1) The legislature did not intend, through the regulation of the alcoholic beverage industry to preempt the imposition of the U & O tax on malt and brewed beverage distributors; and (2) the legislature did not intend to preempt school districts from imposing taxes designed to support public education, since school districts are agents of the Commonwealth

charged with fulfilling a constitutional mandate to support a system of public education.[3]

As a preliminary matter, we wish to clarify the roles of the City and the District in levying the U & O tax. The Commonwealth granted the City of Philadelphia, not the School District, the authority to levy, assess, and collect taxes under the Act of August 5, 1932, Ex.Sess., P.L. 45, *as amended*, 53 P.S. § 15971, commonly known as the Sterling Act. Because the School District itself is not empowered to levy taxes,[4] the legislature enacted the Act of August 9, 1963, P.L. 640, *as amended*, 53 P.S. § 16101, commonly known as the Little Sterling Act, which vested the City with the power to authorize the enactment of taxes to benefit the District. Hence, in the present case, the City, by ordinance, enacted the U & O tax on behalf of the District. Section 19–1806(2) of the Philadelphia Code.

■ First, the City contends that the trial court erred in holding that the Commonwealth, through its regulation of the alcoholic beverage industry, preempted the authority to levy this U & O tax.

The alcoholic beverage industry is regulated by Liquor Code, Act of June 29, 1987, P.L. 32, *as amended*, 47 P.S. §§ 1–101 to 8–803. The Liquor Control Board has promulgated regulations controlling the alcoholic beverage industry which can be found at 40 Pa.Code §§ 1.1–17.41. The Commonwealth, in addition, has itself imposed taxes on the sale of liquor, wines, and malt beverages.[5]

---

3. Our scope of review of an order granting a motion for summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. *Peterson v. Philadelphia Housing Authority*, 154 Pa.Commonwealth Ct. 309, 623 A.2d 904 (1993). A court reviewing an order granting summary judgment must read the record in the light most favorable to the nonmoving party and resolve all doubt against the movant. *J.R.W., Inc. v. Manchester Borough Council*, 148 Pa.Commonwealth Ct. 238, 610 A.2d 1078 (1992).

4. Generally, school districts throughout the Commonwealth have the authority to levy taxes under Section 507 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 5–507. The School District of Philadel-

phia, however, does not have the direct power to levy taxes, because its members are appointed by the mayor of Philadelphia and the Legislature may not delegate the power to tax to appointed officials. *Danson v. Casey*, 484 Pa. 415, 399 A.2d 360 (1979); Philadelphia Home Rule Charter, 351 Pa.Code § 12.12–201.

5. There are four taxes imposed by the Commonwealth on alcoholic beverages: (1) Spiritous and Vinous Liquor Tax Law, Act of December 5, 1933, P.L. 38, *as amended*, 47 P.S. §§ 748–767; (2) Emergency Liquor Tax, Act of June 9, 1936, P.L. 13, *as amended*, 47 P.S. §§ 794–796; (3) Malt Beverages Tax Law, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 9001–9016; and (4) Sales Tax Act, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7201.

In *Wilsbach Distributors Inc.,* our Supreme Court considered the question of whether the Commonwealth, through its regulation of the alcoholic beverages industry, preempted the City of Harrisburg from imposing its business and mercantile tax on a distributor of malt and brewed beverages. In that case, Wilsbach Distributors operated a malt and brewed beverage distributorship in the City of Harrisburg. Harrisburg had a mercantile tax of one and one-half mills per $1000.00 of gross volume of business conducted within the city limits. Wilsbach refused to pay the mercantile tax on the ground that it was exempt. Harrisburg issued citations for failure to pay the tax and Wilsbach was found guilty of failing to pay the tax by a district justice. Wilsbach appealed and, after a hearing de novo in the Court of Common Pleas of Dauphin County, Wilsbach was found guilty of not paying the tax. Wilsbach then appealed to this Court, arguing, *inter alia,* that the tax was preempted by the Liquor Code. This Court rejected Wilsbach's argument and affirmed the common pleas court. Thereafter, the Supreme Court granted Wilsbach's petition for allowance of appeal and reversed this Court's decision.

In *Wilsbach,* the Supreme Court reviewed the Liquor Code and concluded that the provisions of that Code and the regulations promulgated under that Act, along with the Commonwealth's taxes on the sale of alcoholic beverages, clearly demonstrated that the General Assembly intended to regulate in plenary fashion all aspects of the alcoholic beverage industry. The *Wilsbach* court explained the extent of the Commonwealth's plenary power over the business of dispensing alcoholic beverages as follows:

> In the exercise of its legitimate state interest, the Commonwealth ... directly controls what beverages may be bought or sold in the Commonwealth, who may sell on the retail and the wholesale level, for what prices beverages may be sold and bought from the State, and to issue licenses to distributors and wholesalers so that they may sell to consumers through its Board. The Commonwealth controls not only the geographical location of all its licensees, but also the physical structures in which beverages may be kept and sold. The site of every licensed premise in the Commonwealth is exclusively within the discretion of the Board. The only concessions to municipalities is their right to exclude any or all classes of licensees ... and to exercise appropriate zoning controls.

> Enforcement of the [Liquor] Code and its regulations is vested in the Board. The Board and its investigative staff are vested with the full police power to enter any licensed establishment and check for violations of the Code, and, if necessary, to arrest violators of the Code ... and to seize unlawfully obtained beverages, in plain view, without a warrant.

> As part of the legislature's regulatory scheme, fees are imposed for the privilege of obtaining and keeping licenses issued by the Board.... These fees are collected for the benefit of the municipalities in which the licensed establishments are located and are rebated by the Commonwealth to those municipalities.

> [I]ndicative of the Commonwealth's plenary exercise of control ... are the extensive taxes imposed on all sales of alcohol on the local and retail levels. Considerable revenues are generated for the Commonwealth by its operation of the State Liquor Stores and the additional taxes imposed on purchases and sales of alcoholic beverages. (Footnotes and emphasis omitted.)

*Wilsbach,* 513 Pa. at 221–22, 519 A.2d at 400–01. Because of the Commonwealth's plenary power over the alcoholic beverage industry, as demonstrated by the above discussion, the Supreme Court reached the following conclusion:

> The regulatory scheme now under review controls a state-run monopoly, maintained for the health, welfare, and safety of the citizens of this Commonwealth and upon which the Commonwealth depends for substantial revenues. Such pervasive control over all phases of the liquor industry, along with the extensive taxation and fees imposed, indicates the legislature's intent to control this industry and to receive

all benefits inherent by regulating the industry, *including raising revenues through regulation to the exclusion of all local attempts to interfere with the state regulation by imposing taxes on a local level.*

[T]he legislature has adopted a scheme of regulation so pervasive over the entire alcoholic beverages industry, *that it has 'preempted the field' to the exclusion of all interference from subordinate legislative bodies. Such preemption by the legislature bars local legislative control by regulation or taxation.* (Emphasis added.)

*Id.* at 223–24, 519 A.2d at 402.

The *Wilsbach* court held that Harrisburg's business privilege tax constituted a tax on the privilege of operating a malt and brewed beverages distributorship and was, thus, preempted by the Commonwealth. Since the privilege of operating such a distributorship is controlled by the Commonwealth, the court reasoned, it could not be taxed by Harrisburg.

In the instant case, WBC argues that, based on *Wilsbach,* the City did not have the authority to impose the U & O tax on it or any other distributors of malt and brewed beverages located in the District, because it is a tax on the privilege of operating a malt and brewed beverages distributorship. We would have to agree.

■ Our Supreme Court has held that the City's U & O tax is a tax on the privilege of using real estate for business purposes. *Wanamaker v. Philadelphia School District,* 441 Pa. 567, 274 A.2d 524 (1971). A malt and brewed beverages distributorship cannot be operated at all unless it occupies and uses real estate. A distributor must operate in a location and on real estate approved by the Commonwealth, and approval of the premises used for such distributorship is an integral part of the licensing process. Section 436 of the Liquor Code, 47 P.S. § 4–436. The U & O tax, thus, directly impacts on WBC's privilege to operate a distributorship. Therefore, because the privilege of operating a malt and brewed beverages distributorship is granted by the Commonwealth and cannot be taxed or regulated by the City, we hold that the City's U & O tax is preempted by the Liquor Code and by the taxes of alcoholic beverages enacted by the Commonwealth, *Wilsbach,* and that the trial court correctly granted WBC's motion for summary judgment.[6]

The City argues that *Wilsbach* is distinguishable from the instant case, because *Wilsbach* involved a tax on a distributor's gross volume of business while the present case concerns a tax on the use of commercial real estate. The City asserts that this distinction is critical for the reason that *Wilsbach* only preempts taxes on the sale of liquor. *Wilsbach,* however, preempted local taxes imposed on the privilege of operating a beer distributorship; it did not merely proscribe local taxes on a distributorship's sales. Hence, regardless of whether a municipality taxes a distributorship's gross volume of business, as Harrisburg did in *Wilsbach,* or taxes the physical space occupied by a distributorship, the municipality is imposing a tax on the privilege of operating a distributorship within its territory. Therefore, this argument must fail.[7]

---

6. The City argues that we should not follow *Wilsbach* in this matter, because it is a plurality opinion (one justice joined Justice Papadakos' opinion, three justices concurred, and two dissented) and, thus, has no precedential value. While the City is correct in its statement that plurality decisions of the Supreme Court are not precedential, *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968), we recognize that a majority of the justices in *Wilsbach* agreed that the General Assembly has preempted local regulation of the alcoholic beverages industry. *Cf. Gravinese v. Johns–Manville Corp.,* 324 Pa.Superior Ct. 432, 471 A.2d 1233 (1984) (wherein the Superior Court held that where the lead opinion of the Supreme Court in *Anthony v. Koppers Co.,* 496 Pa. 119, 436 A.2d 181 (1981), was not joined by a majority of the members of the Court, the decision was nevertheless precedential, since a majority of the justices agreed to the result). Furthermore, we find the lead opinion in *Wilsbach* to be highly persuasive, and we note that this Court has previously followed *Wilsbach* in *Dean v. City of Harrisburg,* 128 Pa.Commonwealth Ct. 431, 563 A.2d 965 (1989), *petition for allowance of appeal denied,* 526 Pa. 640, 584 A.2d 322 (1990). Therefore, regardless of the fact that *Wilsbach* is a plurality opinion, we will follow it.

7. The City also argues that the U & O tax is not preempted by the Commonwealth, since the *malt beverage industry is not regulated or taxed to the*

The City next contends that it is inappropriate to preempt the U & O tax, because the District is an agent of the Commonwealth discharging the General Assembly's constitutional duty to provide and fund public schools. We disagree. It is true that Article III, Section 13 of the Pennsylvania Constitution requires the General Assembly to provide public schools and that school districts are agencies of the Commonwealth. In the present case, however, the City's argument is based on the incorrect factual premise that the District imposed the U & O tax. On the contrary, the U & O tax was levied by the City of Philadelphia, not by the School District, since the District itself does not have the authority to levy and collect taxes. Therefore, the City enacted the U & O tax and, as a local agency, it may not tax a distributorship for the privilege of doing business within its territory. *Wilsbach.* Moreover, while school districts are agencies of the Commonwealth, the City has not cited, nor has our research revealed, any authority showing that school districts are the equivalent of the Commonwealth for the purpose of levying taxes.[8] Hence, in light of the above, we reject the City's assertion that the U & O tax is saved from preemption, because the tax benefits the School District.

Accordingly, the orders of the trial court are affirmed.

### ORDER

NOW, January 25, 1995, the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matters are hereby affirmed.

extent of the liquor industry. *Wilsbach,* however, like the instant case, involved a distributor of malt and brewed beverages, and our Supreme Court determined that the local tax on that distributor was preempted without distinguishing the regulatory and tax burdens of the malt industry as contrasted with the liquor industry. Moreover, because the malt beverage industry and the liquor industry are both regulated by the same Liquor Code and are both subject to state taxation (albeit different taxes), we conclude that preemption of local laws is not limited to the liquor industry.

In addition, the City argues that Section 1201(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 10001(a), the enabling statute for the Malt Beverage Tax, is a savings clause which protects local tax ordinances from preemption. Contrary to the City's argument, it is not the Malt Beverage Tax or the Tax Reform Code of 1971 which invalidates the U & O tax; that tax is preempted by the pervasive regulatory scheme of the Liquor Code combined with the various state taxes on all alcoholic beverages. Hence, this argument also is without merit.

8. We note that school districts are "political subdivisions," like cities, boroughs, and townships. Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991. Further, school districts are local agencies for purposes of Sections 8541 and 8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–42 (pertaining to governmental immunity), and the Local Agency Law, 2 Pa.C.S. §§ 551–55 and §§ 751–54.