Wilsbach Distributors, Inc., Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued November 15, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Ronald M. Lucas,* with him *Norman P. Hetrick and Karen L. Hackman, Tive, Hetrick & Pierce, P.C.,* for appellant.

*Judith Brown Schimmel,* with her, *Nathan H. Waters, Jr.,* for appellee.

OPINION BY JUDGE BARRY, March 28, 1984:

Appellant, Wilsbach Distributors, Inc., was found guilty of failing to pay its City of Harrisburg business privilege and mercantile tax for the years 1979 and 1980. Appellant was sentenced to pay fines of $200.00 plus the costs of prosecution. Additionally, appellant was ordered to pay its delinquent taxes plus penalties for the two years in question. This appeal followed.[1]

Appellant, an importing distributor of malt and brewed beverages, is licensed by the Commonwealth pursuant to Section 439 of the Liquor Code.[2] Accordingly, appellant annually pays a license fee of $900.00 plus a filing fee of twenty dollars ($20.00) to the Liquor Control Board. Furthermore, appellant is required to pay an annual fee of two dollars ($2.00) for vehicle identification cards for each vehicle used to transport malt and brewed beverages. Appellant paid the $920.00 for the license and filing fee in both 1979 and 1980. Furthermore, appellant paid twenty-six dollars ($26.00) for vehicle identification cards in 1979 and thirty-two dollars ($32.00) for the same purpose in 1980.

Pursuant to the Local Tax Enabling Act,[3] the City of Harrisburg (City), on December 12, 1978, enacted its Business Privilege and Mercantile Tax Ordinance. As applied to appellant, the tax rate was set at one and one-half mills per $1,000.00 of gross volume of business conducted within the territorial limits of the City, subject to a maximum tax of $3,000.00.

Appellant does not dispute that it failed to pay the Business Privilege and Mercantile Tax for the years

---

[1] Jurisdiction over this appeal is conferred upon this Court by Section 762(a)(4) of the Judicial Code, 42 Pa. C. S. §762(a)(4).

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-439.

[3] Act of December 31, 1965, P.L. 1257, 53 P.S. §6901.

in question. It claims, however, that for reasons which will be fully described later, it is exempt from the payment of said tax to the City.

On October 13, 1981, appellant was served with citations for failing to pay the City tax in both 1979 and 1980. A hearing was held before a district justice and on March 30, 1982, appellant was notified that it had been found guilty. Appellant filed a timely notice of appeal and sought a trial de novo in the Court of Common Pleas of Dauphin County. Pa. R. Crim. P. No. 67(f) (Rule 67).

Prior to the trial de novo, appellant and the City entered into a stipulation of facts and agreed that if appellant had filed City tax returns for the years in question, appellant would have owed $1,522.48 in 1979 and $1,685.00 in 1980, exclusive of any penalties due for late payment. The parties also stipulated that other facts concerning the procedural history of this case were true. After an evidentiary hearing the court en banc, by opinion and order of September 30, 1982, held that appellant was not exempt from paying the tax and, therefore, was guilty of the summary offenses charged. By the same order, the sentence as previously described was imposed and this timely appeal followed.

Presently, appellant raises three issues. Appellant first argues that the Commonwealth, by enacting comprehensive legislation regulating the liquor industry, has pre-empted the entire field and the City is, therefore, prohibited from taxing appellant's malt and brewed beverage business. Second, appellant argues that the Local Tax Enabling Act prohibits the City from imposing its tax on appellant, as the Commonwealth has already placed a tax and/or license fee on the same subject matter. Finally, appellant claims that the trial court erred in including the payment of

back taxes and penalties in a sentence imposed pursuant to criminal convictions for summary offenses of failure to file and pay the tax in question.

Before proceeding to the merits of this controversy, we must first dispose of an important procedural matter, *i.e.,* whether appellant has failed to file any necessary written post-verdict motions in this case. In *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), the Supreme Court condemned the practice of failing to file specific written post-verdict motions in compliance with Pa. R. Crim. P. 1123(a) (Rule 1123). For a period of time, the Court recognized various exceptions which allowed non-compliance with Rule 1123(a) to preserve issues for appellate review. In *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979), the Court held that literal compliance with Rule 1123(a) would be required for all post-verdict motions filed after September 4, 1979, and failure to comply would result in a waiver of those issues not specifically included.

Despite the mandate of the Supreme Court, confusion existed in the area of appeals to the court of common pleas from convictions by a district justice for summary offenses. In *Commonwealth v. Koch,* 288 Pa. Superior Ct. 290, 293, 431 A.2d 1052, 1054 (1981), the court succinctly stated, "Rule 67 which establishes the procedure for perfecting an 'appeal' to the Court of Common Pleas for a trial de novo is, in reality, a retrial of the case as if the prior summary proceeding had not occurred." (Footnote omitted.) Furthermore, "once an appeal is taken to the Court of Common Pleas, . . . all general provisions of the criminal rules become applicable to the trial de novo unless specifically made inapplicable." *Id.* at 294, 431 A.2d at 1054. (Footnote omitted.)

Rule 1123(c) provides:

Upon finding of guilt, the trial judge shall advise the defendant *on the record*:

(1) of the right to file post-verdict motions and the right to assistance of counsel in the filing of such motions and on appeal of any issues raised therein;

(2) of the time within which he must do so as set forth in paragraph (a); and

(3) that only the grounds contained in such motions may be raised on appeal. (Emphasis added.)

The Supreme and Superior Courts have consistently held that failure to comply with Rule 1123(c) militates against any finding that the defendant knowingly and intelligently waived the right to file post-verdict motions. *Commonwealth v. Cathey*, 477 Pa. 446, 384 A.2d 589 (1978); *Commonwealth v. Cascario*, 298 Pa. Superior Ct. 519, 445 A.2d 109 (1982). The remedy normally afforded a defendant in this situation is a remand to the trial court to permit a defendant to file post-verdict motions nunc pro tunc. *Koch, Cathey* and *Cascario*.

Numerous reasons have been given for requiring any litigant to properly preserve an issue for appellate review by taking the necessary steps at the trial level. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Paramount among the many concerns is giving the trial court the first opportunity to rule on the issue presented. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). In some instances, the case is in such a posture that judicial economy allows a reviewing court to decide the merits of certain issues without the necessity of a remand to allow the filing of post-verdict motions nunc

pro tunc. *Koch*. As far as the first two issues raised by appellant are concerned, we believe the instant case falls within this category.

Appellant's first two issues involve legal questions relating to its claimed exemption from the City tax and as such, are challenges to the sufficiency of the evidence as in *Koch*. The trial court, furthermore has already ruled on these exact issues and we see no reason for a remand to allow the trial court to decide these issues. The trial court, on the other hand, has had no opportunity to rule on the question of the propriety of including the payment of back taxes and penalties in the sentence imposed for these convictions. Were we to decide that appellant is exempt from paying the City tax, appellant's convictions would be reversed and this question moot. If, on the other hand, we were to decide appellant is not exempt from payment of the tax, we would then remand for the filing of post-verdict motions nunc pro tunc on the issue of the legality of the sentence. For these reasons, we will decide without first remanding whether appellant is exempt from paying the City tax.

As previously mentioned, appellant first argues that the Commonwealth has, by its comprehensive legislation regulating the liquor industry, pre-empted the field, thereby prohibiting the City from levying its Business Privilege and Mercantile Tax on the liquor industry. In *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 380-81, 77 A.2d 616, 619-20 (1951), the Court set forth the following standard to be applied when a question of pre-emption arises:

> There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent

with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand there are statutes which expressly provide that municipal legislation in regard to the subject covered by the state act is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the state; in such cases the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is, of course, self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute . . . . [M]unicipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations . . . but if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid . . . . (Citations omitted.)

Needless to say, the Liquor Code is silent on the question of pre-emption, thereby requiring a review of the "general tenor" of the Liquor Code to determine if the City tax is permitted to be levied on appellant.

In *United Tavern Owners of Philadelphia v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868

(1971), which will be discussed more fully later, the court was presented with a two-fold challenge to a proposed ten per cent tax on retail over the counter sales of liquor and malt and brewed beverages, almost identical to those involved here. For purposes relevant at this point, the court was asked to decide whether the Liquor Code alone preempted the field. A majority of that court[4] specifically held that the legislature, by enacting the Liquor Code, had not by implication intended to preempt the field as to local taxation. Our research has failed to discover any other case speaking to this exact issue. We believe the discussion on this issue in the opinion of the Court is persuasive and convinces us we must reject appellant's argument.

The only case in which the Supreme Court has found an implicit pre-emption which prevents local taxation is *Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 412 A.2d 1366 (1980), which case appellant cites for its position. Suffice it to say that the Banking Code[5] is not the Liquor Code and *Allegheny Valley* is distinguishable on that ground alone.

Appellant next argues that the Local Tax Enabling Act prohibits the City from imposing the Business Privilege and Mercantile Tax on appellant's activities. Section 2 of that Act prohibits a municipality from taxing "a privilege, transaction, subject, occupation

---

[4] Only five members of the Court participated in the consideration and decision in *United Tavern Owners*. Mr. Justice (later Chief Justice) O'BRIEN wrote the opinion of the Court, in which he rejected the notion of field pre-emption by the Liquor Code. Chief Justice BELL and Mr. Justice (later Chief Justice) ROBERTS concurred in the result. Mr. Justice POMEROY filed a dissenting opinion, in which Mr. Justice (later Chief Justice) JONES joined, which also rejected the notion of field pre-emption.

[5] Act of November 30, 1965, P.L. 847, *as amended*, 7 P.S. §101.

or personal property which is now or does hereafter become subject to a state tax or license fee." 53 P.S. §6902(1)(Supp. 1983-84). The purpose of this section is to prevent double taxation, prohibiting a municipality from duplicating a state tax. *F. J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971). Appellant points to three different state taxes and license fees which it claims are duplicative of the City tax.

As already mentioned, appellant paid to the Liquor Control Board over $900 for each year in question for its license, filing fee and vehicle identification cards. Further, the Malt Beverage Tax Law[6] provides that an out-of-state manufacturer who ships or transports malt or brewed beverages into the Commonwealth must pay a tax of one cent per pint of beverage so shipped or transported. 47 P.S. §105(a). According to the testimony of appellant's general manager, this tax is included in the total price paid to the manufacturer of the imported beverages. The out-of-state manufacturer then remits the tax due to the Commonwealth. (Pages 18-19 of the transcript of the July 21, 1982 hearing). Appellant's payments of the malt beverage tax were $293,000.00 in 1979 and $378,000.00 in 1980. (Page 9, July 21, 1982).[7]

The Tax Reform Code of 1971[8] provides:

There is hereby imposed upon each separate sale at retail of tangible personal property . . . within this Commonwealth a tax of six per cent of the purchase price, which shall be collected by the vendor from the purchaser, and shall be

---

[6] Act of May 5, 1933, P.L. 284, *as amended*, 47 P.S. §103.

[7] The City argues that it is the manufacturer, and not appellant, that is responsible for paying the malt beverage tax. As will be seen shortly, whether the incidence of the tax falls on the manufacturer or appellant is of no moment for our analysis.

[8] Act of March 4, 1971, P.L. 6, 72 P.S. §7101 (Supp. 1983-84).

paid over to the Commonwealth as herein provided.

72 P.S. §7202(a) (Supp. 1983-84).

"Sale at Retail," for our purposes, is defined as: with respect to . . . "malt and brewed beverages" shall include . . . the sale of "malt and brewed beverage" by a "manufacturer of malt or brewed beverages", "distributor" or "importing distributor" to any person for any purpose, except sales by a "manufacturer of malt or brewed beverages" to a "distributor" or "importing distributor" to a "distributor" within the meaning of the "Liquor Code". The term "sale at retail" shall not include any sale of "malt or brewed beverages" by a "retail dispenser" or any sale of "liquor" or "malt or brewed beverages" by a person holding a "retail liquor license" . . . .

72 P.S. §7201(k) (10) (Supp. 1983-84). Appellant when making sales at retail adds the six per cent sales tax to all sales to "retail dispensers" and to individuals purchasing "malt or brewed beverages" for personal use. Appellant then remits those amounts collected to the Commonwealth. In 1979, appellant remitted $156,000.00 and in 1980 remitted $191,000.00 to the Commonwealth. (Page 9, July 21, 1982).

In *Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 652, 136 A.2d 821, 825-26 (1957), (Plurality opinion)[9], the Court stated:

In determining whether a tax duplicates another tax and results in double taxation pro-

---

[9] *National Biscuit Co.* involved the Sterling Act, Act of August 5, 1932, P.L. 45, *as amended*, 53 P.S. §15971, which, for purposes relevant instantly, contains a prohibition against local taxation where state taxes are involved identical to the prohibition in the local Tax Enabling Act.

hibited to local taxing authorities, the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases. The incidence of a tax embraces the subject matter thereof and, more important the measure of the tax, i.e., the base or yardstick by which the tax is applied.

Keeping this standard in mind, one can see the Business Privilege and Mercantile Tax duplicates neither the Malt Beverage Tax nor the Sales Tax.

Simply put, the Business Privilege and Mercantile Tax is a tax allowing one to do business within the territorial limits of the City of Harrisburg and the tax is measured by a percentage of the gross sales in that city. The Malt Beverage Tax on the other hand, as applied to appellant, is a tax which allows appellant to import malt and brewed beverages manufactured out of state into the Commonwealth and is measured by the quantity of beverages so imported. Because both the subject matter and measure of the two taxes are dissimilar and, therefore, non-duplicative, it matters not whether the Malt Beverage Tax is actually paid by appellant or the out-of-state manufacturer.

The Sales Tax, with certain non-relevant exceptions, is applied to retail sales within the Commonwealth. While the tax is collected by the retail vendor, it is actually paid by the purchaser. Again, we fail to perceive sufficient similarities between the City tax and the sales tax to hold the two duplicative even though both are measured by the same base, i.e., a percentage of sales. The fact that the sales tax is actually paid by the customer, rather than appellant, further convinces us of the propriety of our view.

The annual $900 license fee paid by appellant poses a different problem, as the Local Tax Enabling Act

prohibits local taxation where the Commonwealth has subjected the taxpayer to a license fee on the same privilege which the municipality is attempting to tax. Both the license fee and the city tax grant appellant the privilege to engage in its chosen business. In *Philadelphia Tax Review Board v. Smith, Kline & French Laboratories*, 437 Pa. 197, 262 A.2d 135 (1970), the taxpayer was claiming an exemption from a Philadelphia Business Privilege Tax because it was paying license fees to the Commonwealth as required by Section 11 of the Drug, Device and Cosmetic Act.[10] A majority of the Court held that the mere existence of these license fees did not preclude imposition of the Business Privilege Tax. Mr. Justice COHEN, speaking for himself and Mr. Justice O'BRIEN, wrote that the prohibition of the Sterling Act was applicable only where the license fee was actually a revenue producing measure under the Commonwealth's taxing power; since those license fees were not revenue producing, the local tax was not improper. Mr. Justice ROBERTS, in an opinion joined by Mr. Justice EAGEN, opined that, since the license fee was not based on gross sales as was the city tax, there was no double taxation and the local tax was valid.

We believe that under either theory, appellant cannot claim an exemption from the imposition of the City tax. Under the view expressed by Mr. Justice ROBERTS, no more need be said than that the instant case and *Smith, Kline & French* are indistinguishable. Under the view that the license fee must be revenue producing to prohibit levy of the City tax, we believe the City has met its burden of proof in showing that the license fee of the Commonwealth is truly such, with the monies generated therefrom to pay the costs of

---

[10] Act of September 26, 1961, P.L. 1664, 35 P.S. §780-101.

regulation under the Commonwealth's police power. As Mr. Justice COHEN stated, "[a] revenue measure can be identified by (1) the large monetary income derived and (2) the large income compared to the costs of collection and supervision." *Smith, Kline & French* at 202, 262 A.2d at 138.

The City presented Karen Cumberledge, Chief of Accounting Control for the Liquor Control Board Controller's Office, who testified without contradiction that the amounts generated by all license fees under the Liquor Code were exceeded annually by costs of licensing and enforcement. Section 802 of the Liquor Code provides that one-half of the license fees paid by the manufacturers, distributors and importing distributors of malt and brewed beverages are to be credited to a special account of the State Employees' Retirement Fund earmarked for the pensions of the Liquor Control Board's enforcement officers. The remaining one-half is to be used for the day-to-day expenses of the Liquor Control Board.[11]

Appellant argues that the City has not met its burden of proving that these were true license fees, because no breakdown was offered between the costs of regulating and supervising the relatively limited number of distributors, importing distributors and manufacturers of malt and brewed beverages and the same costs for the much larger number of retail licensees.

---

[11] Section 801 of the Liquor Code creates the "Liquor License Fund", which is funded by license fees collected from hotels, restaurants, clubs and retail dispensers of malt and brewed beverages. The Liquor License Fund is dispensed semi-annually to the municipalities in which the licensees are located. Because these monies are paid to the municipalities, these specific license fees have been held to not be state license fees for purposes of determining whether local taxation is permitted. *Cahill v. Philadelphia*, 381 Pa. 611, 114 A.2d 99 (1955).

As already noted, the funds generated from the tax paid by the retail licensees are reimbursed by the Commonwealth to the local municipalities. We believe appellant's interpretation is unduly restrictive. Since all of the fees collected except those used to fund the Liquor License Fund are used to cover costs of enforcement, of which the pensions of enforcement officers are a part, appellant's license fee is not a revenue producing measure which would under Mr. Justice COHEN's theory in *Smith, Kline & French* preclude imposition on appellant of the City tax.

Appellant argues that *United Tavern Owners* compels a reversal of the trial court in this case. There, the Philadelphia School District attempted to impose a ten per cent tax on the sale of liquor and malt and brewed beverages in hotels, restaurants, taverns and clubs within the City of Philadelphia. In a plurality opinion,[12] Mr. Justice O'BRIEN reasoned that the legislature had intended to pre-empt the field in regard to the specific local tax in question by virtue of two state taxes which already covered the retail sale of liquor. The two state taxes therein were the general statewide sales tax and the eighteen per cent tax on retail sales of liquor, as defined by the Liquor Code, imposed by the Act of June 9, 1936, Ex. Sess., P.L. 13, *as amended*, 47 P.S. §795. Appellant argues that a similar result is compelled here when considering the sales tax in conjunction with the malt beverage tax. We believe, however, that the *United Tavern Owners* plurality opinion is not controlling for at least two reasons. First, the *United Tavern Owners* plurality was careful to note that all three taxes in question were classic sales taxes. In the instant case, the City tax is a business privilege tax and the malt beverage tax is either

---

[12] *See* footnote 4.

a manufacturer's tax or an import tax. Second, *United Tavern Owners* specifically noted that the proposed local tax therein dealt only with the sale of liquor while the instant local tax is applicable to all businesses within the City of Harrisburg. We thus believe *United Tavern Owners* is sufficiently distinguishable from the present case because of the dissimilarity of the taxes involved and, therefore, is not controlling.

We have reviewed all of the arguments advanced by appellant concerning its position that the prohibition in the Local Tax Enabling Act against double taxation is applicable and prevents imposition of the city business privilege tax on appellant. Our review compels us to conclude that appellant's arguments are not persuasive. We believe, therefore, that appellant is not exempt from paying the City tax and its summary convictions for non-payment thereof were proper.

As previously mentioned, appellant also alleges that the trial court erred in including the payment of back taxes and penalties in the judgment of sentence of these criminal proceedings. No post-verdict motions were filed and the trial court has had no opportunity to pass on this question. For the reasons heretofore stated, we believe a remand to the trial court is necessary to allow appellant to file post-verdict motions nunc pro tunc. *Koch.*

#### ORDER

AND Now, March 28, 1984, the judgments of sentence imposed at Nos. 777 and 778 C.D. 1982 are vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.