**Weatherly Area School District**

*Daniel A. Miscavige,* for plaintiffs Weatherly Area School District and Township of Lehigh.

*Jane F. Engler,* for plaintiff Jim Thorpe Area School District.

*Lawrence W. Dague,* for defendants.

LAVELLE, *P.J.,* October 24, 1988—This tax collection action presents several legal challenges to the levy of "amusement taxes" by three local taxing bodies upon whitewater rafting operations in Carbon County.

Plaintiffs, Weatherly Area School District, Township of Lehigh and Jim Thorpe Area School District, each filed substantially identical complaints against one of the two defendants, Whitewater Challengers Inc. and Pocono Whitewater Ltd. Plaintiffs' complaints seek to collect amusement taxes alleged to be due from defendants. Because each of these cases involve facts which are identical in all material respects and present common questions of law, upon joint motion of counsel for plaintiffs, we consolidated these actions for trial.

The parties stipulated that the issue of defendants' liability for the taxes be bifurcated from the

issue of damages, and that the court determine the issue of liability first. The parties also agreed to submit their case on the issue of liability to the court on a stipulated set of facts and exhibits.

After carefully reviewing the record and after considering the briefs and oral argument of counsel, we make the following

## FINDINGS OF FACT

(1) Plaintiffs, Weatherly Area School District and Jim Thorpe Area School District, are school districts of the fourth class incorporated under the laws of the Commonwealth of Pennsylvania. Plaintiff, Township of Lehigh, is a township of the second class incorporated under the laws of the Commonwealth of Pennsylvania.

(2) Defendants Whitewater Challengers Inc. and Pocono Whitewater Ltd. (referred to collectively as "Rafters"), are Pennsylvania corporations engaged in the business of offering whitewater equipment rentals, guided tours and instructions on whitewater rafting on the Lehigh River within the Lehigh Gorge State Park.

(3) Lehigh Gorge State Park is property owned by the Commonwealth of Pennsylvania, Department of General Services, and maintained and operated by the Department of Environmental Resources, Bureau of State Parks.

(4) Weatherly Area School District includes the following municipalities in Carbon County: Lehigh Township, Lausanne Township, Eastside Borough, and north Kidder Township. Jim Thorpe Area School District includes south Kidder Township, Penn Forest Township and Jim Thorpe Borough.

(5) Over a three-year period, substantially identical "amusement taxes" were adopted by each of the plaintiffs as follows: Jim Thorpe Area School Dis-

trict by resolution adopted May 23, 1983, and effective November 1, 1983; Weatherly Area School District by resolution adopted May 26, 1982, and effective July 1, 1982; and Township of Lehigh by ordinance adopted June 2, 1980, and effective five days thereafter. The ordinance and two resolutions will be referred to collectively throughout this opinion as "resolutions."

(6) The amusement taxes are applicable to admission of patrons to "places of amusement" that are "within the limits" of the school district or township. The amusement taxes range from 2.5 percent to 5 percent of the amount of admission fee charged by the rafters.

(7) The resolutions place a duty to collect the amusement tax upon the "owner" of an amusement, which is defined in the resolutions as the "(person) in possession and operation of those activities designated as amusements."

(8) Under the resolutions, the owners of an amusement are required to submit either quarterly or monthly reports to the plaintiffs detailing the amount of amusement taxes collected from patrons during that reporting period. At the time the report is submitted, the owner of an amusement is required to pay the full amount of amusement taxes collected from patrons during that reporting period.

(9) From the effective date of the amusement taxes and until March 31, 1986, the Rafters made payments of the amusement taxes to plaintiffs.

(10) Since March 31, 1986, the Rafters have refused to continue paying the amusement taxes and have discontinued all payments of the amusement taxes to the plaintiffs, notwithstanding plaintiffs' demands for such payments.

(11) Under section 1904-A of the Pennsylvania Administrative Code, Act of July 11, 1985, P.L. 232,

§2, 71 P.S. §510-4, effective January 1, 1986, the Commonwealth of Pennsylvania, Department of Environmental Resources, began licensing the Rafters in connection with the operation of their rafting activities by requiring execution of written documents titled "concession license agreements." The concession license agreements set forth the terms and conditions of the agreements in effect between the Commonwealth of Pennsylvania and the Rafters during the relevant tax periods.

(12) The rafts utilized in the rafting operations are owned and provided by the Rafters.

(13) The principal office of defendant Whitewater Challengers Inc. is Star Route 6A-1, Eastside Borough, White Haven, Carbon County, Pa., which is within the limits of the Weatherly Area School District.

(14) Patrons of the rafting activities operated by Whitewater Challengers Inc. assemble at the Whitewater Challengers' "campground" situate in Lehigh Township, Carbon County.

(15) Whitewater Challengers Inc. makes transportation available to patrons from the "campground" as aforesaid to the point of embarkation on the Lehigh River within lands of the Lehigh Gorge State Park.

(16) Patrons are then guided down the Lehigh River by employees of Whitewater Challengers Inc. to a point of debarkation at a point within the Lehigh Gorge State Park either in the Village of Rockport, Lehigh Township, or in the Borough of Jim Thorpe.

(17) Whitewater Challengers Inc. makes transportation available to patrons from the point of debarkation and returns them to the Whitewater Challengers' "campground."

(18) Defendant Pocono Whitewater Ltd.'s princi-

pal office is situate at Route 903, Jim Thorpe, Carbon County, Pa., which is within the limits of the Jim Thorpe Area School District.

(19) Patrons of the rafting activities operated by Pocono Whitewater Ltd. assemble at the place of business of Pocono Whitewater in Jim Thorpe.

(20) Pocono Whitewater Ltd. makes transportation available to patrons from its place of business to the point of embarkation on the Lehigh River within lands of the Lehigh Gorge State Park.

(21) Patrons are then guided down the Lehigh River by employees of Pocono Whitewater Ltd. to the point of debarkation at a point in the Lehigh Gorge State Park.

(22) Pocono Whitewater Ltd. makes transportation available to patrons from the point of debarkation and returns them to Pocono Whitewater's place of business in Jim Thorpe.

(23) The Lehigh River is designated as a Pennsylvania scenic river under the Lehigh Scenic River Act, Act of April 5, 1982, P.L. 222, §1, 32 P.S. §820.61 et seq.

## DISCUSSION

The Rafters mount several alternative, yet related, legal challenges to plaintiffs' amusement taxes. Specifically, the Rafters argue that: (1) under section 3 of the Local Tax Enabling Act, the commonwealth's subsequent imposition of a statutory license fee upon the Rafters vacates any application of plaintiffs' amusement taxes to the Rafters; (2) the "owner" of the rafting activity is not the Rafters, but the commonwealth, which is immune from taxation by subordinate governmental units; (3) the application of both the license fee and amusement taxes upon the Rafters results in unlawful double tax-

ation; and (4) the amusement occurs exclusively on commonwealth property and is, therefore, beyond plaintiffs' geographic taxing powers. We will address these issues seriatim.

I

*Vacation of Amusement Taxes by*
*Commonwealth License Fee*

The Rafters' principal challenge to plaintiffs' amusement taxes is that, under section 3 of the Local Tax Enabling Act, the imposition of a statutory license fee upon the Rafters by the Pennsylvania Legislature automatically vacated any application of plaintiffs' amusement taxes to the rafting activities. We disagree.

Initially, we note that the issue sub judice involves neither total pre-emption of a field nor an express statutory prohibition of local taxing authority. Whitewater rafting is simply not a field, such as the banking or liquor industries, where regulation by the commonwealth is so prevalent and pervasive that it "pre-empts the entire field." See e.g., *Commonwealth of Pennsylvania v. Wilsbach Distributors,* 513 Pa. 215, 519 A.2d 397 (1986) (liquor industry); *City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980) (banking industry). Moreover, the 1985 amendment to the Administrative Code, which mandates imposition of the license fee, is silent on the issue of local taxing authority. Therefore, the issue here is simply whether the commonwealth's imposition of a license fee upon the Rafters vacates plaintiffs' amusement taxes under the Local Tax Enabling Act.

Section 3 of the Local Tax Enabling Act provides as follows:

646

"If, subsequent to the passage of any ordinance or resolution under the authority of this act, the General Assembly shall impose a tax or *license fee* on any privilege, transaction, subject, or occupation, or on personal property or on *sales of admission to places of amusement* . . . the Act of Assembly imposing the state tax or license fee thereon shall *automatically vacate the ordinance or resolution* passed under the authority of this act as to all taxes accruing subsequent to the end of the current fiscal year of such political subdivision. It is the intention of this section to confer upon such political subdivisions the power to levy, assess and collect taxes upon any and all subjects of taxation, except as above restricted and limited, which the commonwealth has the power to tax, but which does not tax or license, subject only to the foregoing provision that any tax or license shall be shall automatically terminate at the end of the current fiscal year of the political subdivision." Act of December 31, 1965, P.L. 1257, as amended, 53 P.S. §6903 (emphasis supplied)

Plaintiffs' amusement taxes, all enacted between 1980 and 1983 inclusive, provide for "a tax for general revenue purposes . . . on *sales of admission to amusements* within the limits" of the applicable school district or township. See finding of fact no. 6. The amusement taxes specifically provide that they "shall be read to impose a *tax on the patron,* rather than the owner of amusements," although the owner of the amusement is required to collect the tax from the patron and remit it to the applicable plaintiff. The amusement taxes define the term "owner" as the "person in possession and operation of those activities designated as amusements." Finding of fact no. 8.

In 1985, the Pennsylvania Legislature amended section 1904-A of the Pennsylvania Administrative

Code, pertaining to "Waters." This amendment to the Administrative Code, effective January 1, 1986, provides, inter alia, as follows:

"The Department of Environmental Resources shall have the power and its duty shall be:

. . .

"(9) To promulgate rules and regulations to protect, manage and regulate the recreational use of designated whitewater zones; license whitewater outfitters operating within designated whitewater zones; and establish *fees,* royalties and charges for *licenses* and for using public lands, waters and facilities." Act of July 11, 1985, P.L. 232, §2, 71 P.S. §510-4(9) (emphasis supplied).

Pursuant to this statutory mandate, the Department of Environmental Resources (DER) required each of the Rafters to execute identical "concession license agreements," admitted by stipulation of counsel, effective January 1, 1986, and running for a one-year term with automatic renewal options for nine additional one-year terms. In substance, these agreements grant the Rafters a license for "limited ingress and egress through and over portions of the Lehigh Gorge State Park" for the purpose of operating their rafting activities on the Lehigh River. In return for this right of ingress and egress, the Rafters are to pay DER a lump-sum annual payment of $10,800 and $5 for each raft that is rented. The lump-sum payment is to be recalculated at the end of each term of the agreement on a basis of $3 for each patron engaging in the rafting activity during that term.

Although facially, it might appear that section 3 of the Local Tax Enabling Act requires the vacation of plaintiffs' amusement taxes, the courts of this commonwealth have long recognized that the language of this statute is not absolute and that the mere pay-

ment of a license fee to the commonwealth does not automatically divest a local taxing body of authority to tax a particular subject.

"[T]he mere payment of a license fee is not per se preemptive of local tax authority under the Local Tax Enabling Act of December 31, 1965, P.L. 1257, as amended, 53 P.S. §601 et seq., but becomes so only when the fee is in fact a revenue producing exercise of taxing power, which applies to the same subject of taxation as the challenged local measure. *Tax Review Board v. Smith, Kline & French Laboratories,* 437 Pa. 197, 262 A.2d 135 (1970); *Wightman Health Center v. Office of the Treasurer, City of Pittsburgh,* 59 Pa. Commw. 634, 636-7, 430 A.2d 717, 718 (1981).

Under this two-tier standard, for the commonwealth's imposition of the license fee upon the Rafters to vacate plaintiffs' amusement taxes, the license fee must: (1) be a revenue-producing exercise of the commonwealth's taxing power, as opposed to a mere regulatory mechanism to defray the cost of regulation by DER; and (2) apply to the same subject of "taxation" as the challenged local measure.

## Revenue-Producing or Regulatory Measure

In arguing that the license fee is, in fact, a revenue producing measure, the Rafters cite section 11, paragraph 8 of the agreements which provide as follows:

"Licensee's failure to comply with provisions of this agreement, as listed below, will subject licensee to a progressive system of liquidated damages. This agreement has been established to provide a service, or services, to the citizens of the Commonwealth of Pennsylvania and to visitors of its state

parks' system. Licensee's failure to comply with various provisions of this agreement may cause a loss of services to said citizens and visitors, and also may cause untimely delays in the administration of this agreement, thereby depriving licensor of the agreed upon services and/or *a loss of revenue.*" (emphasis supplied)

In determining whether a charge designated by the legislature as a license fee is only a regulatory mechanism or, in fact, a revenue-producing exercise of the commonwealth's taxing power, the name given it by the legislature is not controlling. *Flynn v. Horst,* 356 Pa. 20, 51 A.2d 54 (1947). The "nomenclature . . . is of no moment, since it is the nature and apparent purpose of the charge which controls its classification." *National Biscuit Co. v. City of Philadelphia,* 374 Pa. 604, 626-7, 98 A.2d 182, 193 (1953).

In distinguishing a "true" license fee from a tax, we look to the test laid down by the Pennsylvania Supreme Court in *National Biscuit, supra,* which provides as follows:

"The distinguishing features of a license fee are: (1) that it is applicable to a type of business or occupation which is subject to supervision and regulation by the licensing authority under its police power; (2) that such supervision and regulation are in fact conducted by the licensing authority; (3) that the payment of the fee is a condition upon which the licensee is permitted to transact his business or pursue his occupation; and (4) that the legislative purpose in exacting the charge is to reimburse the licensing authority for the expenses of the supervision and regulation conducted by it." *Id.* at 615-6, 98 A.2d at 188.

We note that although *National Biscuit* involved the Sterling Act, Act of August 5, 1932, P.L. 45, as

amended, 53 P.S. § 15971 et seq., which contained a prohibition against local taxes where state taxes are involved, the prohibition in the Tax Enabling Act is identical to that in the Sterling Act. *Wilsbach Distributors Inc. v. Commonwealth*, 81 Pa. Commw. 244, 254, 473 A.2d 1123, 1128 (1984), reversed on other grounds, 513 Pa. 215, 519 A.2d 397 (1986). Therefore, the *National Biscuit* test has retained its vitality under the Local Tax Enabling Act. See *Id.*

In the present case, we find that the first three parts of the *National Biscuit* test have clearly been met. First, whitewater rafting is a business or occupation which is subject to supervision and regulation by the commonwealth under the commonwealth's police power. See 71 P.S. §510-4. Secondly, this regulation of the Rafters is, in fact, conducted by the commonwealth, acting through DER. See stipulated fact no. 11; concession license agreements. Thirdly, the payment of the instant license fee to DER is one of the contractual conditions upon which the commonwealth permits the Rafters to operate their rafting activities over and through the Lehigh Gorge State Park. See concession license agreements.

However, on the record before us, we are unable to conclude whether or not the fourth, and perhaps the most important, part of the *National Biscuit* test, that the legislative purpose in exacting the instant license fee is to reimburse the licensing authority for the expenses of its supervision and regulation, is satisfied. First, the 1985 amendment to the Administrative Code, which gave rise to the license fee, provides no indication, beyond its statutory designation of "fees . . . for licenses," whether the legislative purpose behind the license fee is revenue producing or indeed merely regulatory. Secondly, the parties have presented no evidence whatsoever on

either the costs of DER's supervision and regulation of the rafting activities or the aggregate amount collected through the license fees which we could use to compare in determining whether or not the fees are commensurate with the costs of this supervision and regulation. See *Tax Review Board v. Smith, Kline & French Laboratories, supra.* Although we recognize that the phrase "loss of revenue" appears on page 8 of the agreements, in our view, the use of this phrase in the agreements between DER and the Rafters is not competent evidence of the legislative intent behind the enacting license fee.

Therefore, on this record, we are unable to conclude, as the Rafters urge us to do, that the intention of the legislature in enacting the license fee was merely to reimburse DER for the expenses of its supervision and regulation of the Rafters.

## Same Subject of Taxation

Even assuming arguendo that we were to conclude that the intent of the legislature in enacting the license fee was to produce revenue, plaintiffs' amusement taxes would still not be vacated by the license fee unless both the amusement taxes and the license fee are found to apply to the same subject of "taxation." See *Tax Review Board v. Smith, Kline & French Laboratories, supra.*

The amusement tax resolutions specifically state that they "shall be read to impose a tax on the patrons rather than the owners of amusements." In contrast, the license fee provides that the "fees, royalties and charges for licenses" relate to the use of "public lands, waters and facilities." 71 P.S. §510-4(9).

Facially, it would appear that the amusement taxes and the license fee do not apply to the same sub-

ject matter of "taxation." The amusement taxes, by their very language, are imposed upon the patrons of the rafting concessions for the privilege of attending the amusement while the license fee, by the statutory language creating it, is imposed upon the Rafters themselves for the right to use public lands and waters in operating its concession. See 71 P.S. §510-4(9). This conclusion is also supported by a number of Pennsylvania appellate decisions dealing with the validity of other local amusement taxes.

The Pennsylvania Supreme Court has consistently held that an amusement tax is a fee imposed upon the patron individually, and not a tax on the operations, equipment or privilege of using the equipment of the owner. *Board of Commissioners of Swatara Township v. Automatic Bowling Center Inc.*, 419 Pa. 482, 214 A.2d 725 (1965); *Plymouth Lanes Inc. v. School District of Plymouth Township*, 415 Pa. 206, 202 A.2d 811 (1964). The tax imposed is not upon the amusement itself, but upon the privilege of engaging in the amusement. *Fierro v. Williamsport*, 384 Pa. 568, 120 A.2d 889 (1956). Therefore, a tax on the privilege of attending an amusement is not a tax upon the operator or the amusement itself. *Cambria Township School District v. Cambria County Legion Recreation Association*, 201 Pa. Super. 163, 192 A.2d 149 (1963).

Applying these principles to the facts of the case at bar, we conclude that plaintiffs' amusement taxes and the commonwealth's license fee do not apply to the same subject matter of "taxation." The burden of plaintiffs' amusement taxes clearly fall upon the patrons of the rafting activities for the privilege of engaging in that activity, whereas the burden of the license fee falls directly upon the Rafters for their use of "public lands, waters and facilities" in operating their rafting concessions.

For the reasons set forth in (A) and (B) above, we hold that plaintiffs' amusement taxes have not been vacated under section 3 of the Local Tax Enabling Act by the commonwealth's imposition of the license fee upon the Rafters.

## Owner of Rafting Operations

The Rafters also raise two additional challenges to the amusement taxes founded upon the premise that the commonwealth is the "owner" of the amusement as that term is defined in plaintiffs' amusement tax resolutions. First, the Rafters argue that the amusement taxes, which are imposed upon the "owners" of the amusement, are, in fact, taxes directly on the sovereign commonwealth, which is immune from taxation by subordinate governmental units. Second, the Rafters argue that, even if the court finds that the amusement taxes are not placed upon the "owner" of the amusement, the amusement taxes still improperly place a duty upon the commonwealth, as the "owner" of the amusement, to collect the tax on plaintiffs' behalf.

We note at the outset that the Rafters' first argument, that the amusement taxes are placed upon the commonwealth as the owner of the amusement is without merit. As we have previously found in this opinion, the "burdens" of plaintiffs' amusement taxes do not fall upon the "owners" of the amusement, but instead, upon the patrons of the amusement. The "owner" of the amusement is merely charged with a duty to collect and remit the tax. Therefore, the amusement taxes would not be taxes levied upon the commonwealth.

Moreover, even if we had concluded that the burden of the amusement taxes falls upon the "owner" of the amusement, both of the Rafter's arguments would still fall because, as we hold *infra*, the com-

monwealth is not the "owner" of the rafting activities.

The resolutions define the "owner" of the amusement as "that person in possession and operation of those activities designated as amusements." Finding of fact no. 7. The Rafters contend that, under the terms of the agreements, the commonwealth has retained such a high degree of direct regulatory control over the rafting activities, including, inter alia, approval of the Rafters' admission charges, the points of embarkation and debarkation of patrons from the Lehigh River and departure schedules, that the commonwealth is the person in possession and operation of the rafting activities. To further support their contention, the Rafters also cite the following portions of the agreements:

"Whereas, licensor [the commonwealth] desires to *provide for the operation* of guided raft trips and leased rafts on the Lehigh River within Lehigh Gorge State Park; and,

"Whereas, in so doing licensor desires to preserve and protect the inherent wild, scenic, and aesthetic quality of the river and surrounding lands and resources, while providing a quality recreation experience for the maximum number of visitors. . . ." (emphasis supplied)

Lastly, the Rafters cite the fact, stipulated to by the parties subject to plaintiff's objection as to relevancy, that DER takes the position that it is the entity that "provides" the rafting activities. However, the question here is not who "provides" for the rafting activities, but instead, who is the "person in possession and operation" of those activities. Because this fact supplies no direct proof that the commonwealth is the "owner" of the amusement, we sustain plaintiff's objection.

Plaintiffs, on the other hand, argue that, notwithstanding the portions of the agreements cited by the Rafters, the general tenor of the agreements makes clear that the Rafters are the "person[s] in possession and operation" of the rafting activities while the commonwealth exercises only supervisory and regulatory authority over the Rafters, although it is admittedly pervasive. After reviewing the facts of this case, as well as the language of the amusement taxes and the concession license agreements, we agree with plaintiffs.

The Rafters are "engaged in the business of offering whitewater equipment rentals, guided tours and instructions on whitewater rafting on the Lehigh River within the Lehigh Gorge State Park." Finding of fact no. 2. Further, in defining the "owner" of the amusement as the "person in possession and operation" of the amusement, the amusement tax resolutions further define "person" as including, inter alia, natural persons, co-partnerships, associations, corporations or quasi-municipal corporations and similar entities. Neither the commonwealth nor DER fits within this definition of "person," while the Rafters do. Lastly, the agreements state that:

"Whereas, licensee fully understands licensor's objectives and agrees to provide for the operation of guided raft trips and leased rafts on said portion of the Lehigh River, according to the terms and conditions set forth herein, understanding that any future problems relating to the operation of said business will be discussed and resolved to the greatest benefit of licensee, licensor and the public."

On these facts we have no hesitancy in holding that the Rafters, not the commonwealth, are the "person[s] in possession and operation" of the rafting activities and, therefore, are the "owners" of the

rafting activities as defined in the amusement tax resolutions.

## Double Taxation

The Rafters also contend that imposition of both the license fee and the amusement taxes upon them is tantamount to unlawful double taxation because the incidence, or measure, of both the amusement taxes and the license fee are identical, namely the number of patrons engaging in the amusement. We disagree.

The standard to apply to a question of double taxation is found in *Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 136 A.2d 821 (1957), which provides as follows:

"In determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, the operation or the incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in varous cases. The incidence of a tax embraces the subject matter thereof and, more important, the measure of the tax, i.e. the base or the yardstick by which the tax is applied." *Id.* at 652, 136 A.2d at 825-6.

Applying the *National Biscuit* standard to the present case, we find that the amusement taxes do not duplicate the license fee. First, as we stated previously in this opinion, the subject matter of the amusement taxes differs from the subject matter of the license fee. The amusement taxes are placed upon sales of admission to places of amusement and are imposed upon the patron rather than the owner of the amusement. On the other hand, the license fee is imposed directly upon the Rafters, not upon the patrons, for accessing public lands, waters and facilities.

Moreover, we find that the "yardstick" by which the amusement taxes are measured is separate and distinct from the "yardstick" by which the license fee is measured. The amusement taxes are measured solely as a percentage of the admission price paid by the patron, not the raw number of patrons who participate in the rafting activities. Although the amount of amusement taxes collected would admittedly vary according to the number of patrons, the "yardstick" by which the amusement taxes are measured is not the number of patrons, but instead, the amount of the admission charge. In contrast, under the agreements, the lump-sum payment to DER is to be recalculated at the end of each term on a basis of $3 for each patron engaging in the rafting activity during that term. The "yardstick" by which the license fee is measured is clearly limited to the number of patrons, and is in no way affected or measured by the amount of the admission charge exacted by the Rafters. Therefore, we conclude that the incidence of the amusement taxes and the incidence of the license fee are different and no double taxation is present.

## Geographic Limitations

Finally, the Rafters contend that plaintiffs lack the geographical jurisdiction to tax their rafting activities. Relying on the language of the amusement tax resolutions which state that the taxes apply to admission to places of amusements which are "within the limits" of the school district or township, the Rafters build the following argument: since the amusement is rafting, the place of amusement is the Lehigh River, and, therefore, admission to the place of amusement occurs at the bank of the Lehigh River, which of course, is within the bound-

aries of the Lehigh Gorge State Park and outside the limits of the school district or township. We find this argument unpersuasive.

In the present case, there is no dispute that the actual rafting by patrons occurs entirely on the Lehigh River inside the Lehigh Gorge State Park. There is also no question that plaintiffs lack the authority to tax any phase of an activity which occurs beyond the limits of the school district or township. See 53 P.S. §6903; *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986). However, the phase of the activity which is taxed is not the patron's "admission" to the Lehigh River, but the patron's admission to the Rafters' respective places of business for the purpose of using their facilities.

The amusement tax resolutions make clear that plaintiffs amusement taxes do not tax admission to the Lehigh River by defining the term "admission" as follows:

"Admission shall mean the regular monetary charge of any character whatever . . . fixed and exacted, or in any manner received by persons herein defined, from [the] general public, or a limited or selected number thereof . . . for the privilege of attending or engaging in any entertainment . . . , or for use of any special equipment used in connection with amusements."

Moreover, as the Pennsylvania Supreme Court has recently stated, "not every ingredient of a transaction must take place within the taxing district . . . [i]t is [only] necessary that *the phase upon which the tax is based* occur in the taxing jurisdiction . . . ." *Gilberti v. City of Pittsburgh, supra,* citing *Glendale Heights Ownership Association v. Glenolden Borough School District,* 393 Pa. 485, 493, 143 A.2d 386, 389 (1958). (emphasis in original)

In the present, case, admission to the Rafters' places of amusement occurs within the respective limits of plaintiffs' school district or township. Admission of a patron to the rafting activities of Whitewater Challengers Inc. occurs at the Whitewater Challengers campground in Eastside Borough, which is within the limits of both Lehigh Township and Weatherly Area School District. See findings of fact nos. 15, 16, 4. Similarly, admission of a patron to the rafting activities of Pocono Whitewater Ltd. occurs at Pocono Whitewater's place of business in Jim Thorpe Borough, which is within the limits of the Jim Thorpe Area School District. See findings of fact nos. 20, 21, 4. Accordingly, the phase of the rafting activity which is taxed by plaintiffs' amusement taxes, namely admission to the rafting activities, occurs within the geographic limits of the plaintiffs' respective school district or township.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction over the subject matter of, and the parties to, this action, and this proceeding is properly before the court.

(2) The application of plaintiffs' amusement taxes to defendants has not been vacated under section 3 of the Local Tax Enabling Act by the commonwealth's imposition of a statutory licensee fee upon defendants.

(3) Defendants are the "owners" of the rafting activities as that term is defined in plaintiffs' respective amusement tax resolutions.

(4) Plaintiffs' amusement taxes do not unlawfully duplicate the commmonwealth's license fee.

(5) Defendant Whitewater Challengers Inc. is liable for the collection and remittance of the

amusement taxes, which have accrued since March 31, 1986, of plaintiffs Weatherly Area School District and the Township of Lehigh. Defendant Pocono Whitewater Ltd. is liable for the collection and remittance of the amusement taxes, which have accrued since March 31, 1986, of plaintiff Jim Thorpe Area School District.

Based upon the foregoing findings of fact and conclusions of law, we enter the following

## ORDER

And now, October 24, 1988, it is ordered and decreed as follows:

(1) In the case indexed to 88-0850, defendant Whitewater Challengers Inc. shall pay to plaintiff Weatherly Area School District the amusement taxes accrued from admissions of patrons after March 31, 1986.

(2) In the case indexed to 88-0877, defendant Whitewater Challengers Inc. shall pay to plaintiff Township of Lehigh the amusement taxes accrued from admissions of patrons after March 31, 1986.

(3) In the case indexed to 88-0832, defenant Pocono Whitewater Ltd. shall pay to plaintiff Jim Thorpe Area School District the amusement taxes accrued from admissions of patrons after March 31, 1986.